UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER LEE VERDIN, SR.                    CIVIL ACTION

VERSUS                                         NO. 19-12965

JERRY LARPENTER ET AL.                         SECTION "F" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Christopher Lee Verdin, Sr., is a prisoner currently incarcerated in the Nelson Coleman Correctional Center in Killona, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983. The original defendants were Terrebonne Parish Sheriff Jerry Larpenter and several of his deputies, including Colonel T. Daigre; Major S. Bergeron, the warden of the Terrebonne Parish Jail; Deputies Landon Siglar, Nick Daigle and Dexter Gaspard; and Lieutenant T. Schwausch. Verdin alleged that while incarcerated in the Terrebonne Parish Jail in 2019, defendants (1) failed to protect him from other inmates; (2) asserted disciplinary charges against him for fighting, while failing to charge other inmates involved in the fight; and (3) improperly handled his various grievances filed at the jail. Record Doc. Nos. 1 and 9. Verdin was subsequently permitted to amend his complaint to assert a retaliation claim against Deputy Julio Escobar. Record Doc. Nos. 10 and 11. He seeks monetary damages and injunctive relief. Record Doc. No. 11 at pp. 5–6.

On December 17, 2019, I conducted a telephone conference in this matter. Participating were plaintiff pro se and William Dodd, counsel for defendants. Plaintiff

was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Verdin testified that he is currently incarcerated in the Nelson Coleman Correctional Center in St. Charles Parish for protective order violations. He stated that he was convicted of those charges on September 3, 2019, and is currently serving a two-year prison sentence. He testified that he was arrested on those charges on May 26, 2019, and placed in the Terrebonne Parish Jail. He confirmed that the claims he asserts in this case all arise from the period during which he was incarcerated in Terrebonne.

Verdin testified that his first claim is that he was attacked by other inmates on June 2, 2019, and that defendants Deputies Daigle and Gaspard failed adequately to protect him. Specifically, Verdin stated that the deputies "left me in the hostile environment" and stayed in a security booth after they became aware that a fight among inmates had occurred and that "a hostile mob was gathering" to "jump" Verdin again.

He testified that at about 4:15 in the morning, he got up to brush his teeth when inmates O'Bryan Livas, Mervin Jackson and others complained about the noise he was making brushing his teeth. Verdin said that he retorted to the other inmates that he had not complained about noise they had made during the night, and that he would appreciate it if they treated him with the same respect. He stated that the other inmates threatened him; he and Jackson became involved in a physical altercation; and the other inmates

joined the fight, "kicking me and punching me and shoving me in the back bathroom out of the view of the camera . . . until the lights came on." Verdin clarified that the fight began in the view of a security camera, but the other inmates quickly shoved him out of its view. He stated that Deputies Daigle and Gaspard were on duty at that time manning the surveillance camera in that area of the jail.

Verdin testified that he had no prior problems of any kind with Jackson, Livas or any of the other inmates before the subject incident. He stated that he "never knew these inmates" before the fight.  He testified that the defendant deputies were not aware of any problem among the inmates until "within seconds" of the start of the fight, when the lights came on, all within a minute after the fight began. He stated that the fight started in the dark, and the guards turned the lights on when they became aware of it. He testified that when the deputies turned on the lights, all of the attacking inmates ran off, back into their assigned bunks, except for Livas. Verdin stated that Livas struck him, that he threw Livas off of him, pushed Livas to the ground, and ran into the dayroom "to be in plain view of the [surveillance] cameras" so that the guards could see him for his own safety. He stated that the other inmates were threatening him and preparing to attack him again, all of which occurred within another minute. He said he ran into the dayroom so that the guards could protect him from another attack that was then being threatened.

Verdin testified that he was **not** attacked again by the other inmates. He stated that the inmates saw Deputies Daigle and Gaspard, with defendant Lt. Landon Siglar, through

3

the security window. He said the three deputies were reviewing what had just happened on the security camera video in a security booth. Verdin testified that other inmates who had not participated in the fight the first time "got up and were coming and were almost in arms reach" threatening him. He said that the three deputies at that time could see the inmates threatening him through the window of the security booth, but he confirmed that the other inmates did **not** actually attack him again, although they were close to him. Verdin speculated that the other inmates did not attack him again because they could see the deputies in the security booth, and he confirmed that he was not attacked after he initially threw off Livas and went into the dayroom.

Verdin testified that he pressed the "emergency alert button" numerous times, but the deputies did not respond or enter the dayroom area for five to ten minutes. Verdin said that while he remained in the dayroom, the other inmates were threatening him, and while he was in fear of being attacked, the other inmates did not actually attack him. He stated that Deputies Daigle and Gaspard then "extract[ed]" him from the situation. Plaintiff stated that after he was taken out of the dayroom, the incident involving the other inmates ended. He said that the deputies were aware that he had been "jumped," but he acknowledged that the incident occurred suddenly and was not something that either Verdin or the guards knew or suspected would happen beforehand. He confirmed that his complaint centers around the defendants' delay for five to ten minutes in removing him from the dayroom after the fight.

As to his second claim concerning a disciplinary complaint against him for the fight, Verdin complained that he was penalized by being deprived of commissary privileges, while the deputies "didn't charge no one for the gang fighting." He testified that he and Livas were disciplined for fighting, but none of the other inmates were charged or otherwise disciplined. Verdin clarified that he does not allege that he was charged falsely, admitting that he did in fact engage in a fight, but he complained that no one else was charged for the "gang jump." As to the disciplinary charge against him, Verdin acknowledged that he received a written statement of the charge from Siglar, that he quickly pled guilty to the charge without need for a hearing, and that his only punishment was that "they restricted me from commissary" for three weeks, after which the restriction was lifted, and he could return to buy things from the jail store.

Verdin also complained that when he was moved to another area of the jail after the fight, he was outdoors for recreation activities, while other inmates who had been involved in the June 2 incident were also on the yard. He stated that it "could have been a very dangerous . . . situation." He said he and these other inmates, including Jackson but not Livas, were together on the yard for about an hour, but that he avoided contact with them, and no further incident occurred. He complained that defendants should not have placed him in that situation and left him in "in harm's way." He further complained that his grievances about these incidents were dismissed and ruled unimportant and

5

frivolous. Verdin testified that his grievance was dismissed by defendants Lt. Schwausch and Warden Bergeron.

Verdin described the physical injuries he suffered in the fight as a knot on top of his eye, on his face and cheekbone and a black eye. His description of these injuries is confirmed by his verified medical records. Record Doc. No. 19-1 at p. 25 (Doctors and Nurses Notes 6/2/19). He testified that he was not physically injured during the five to ten minutes he spent in the dayroom before the deputies removed him and that his injuries during that time were fear and mental anguish.

Plaintiff stated that after his grievances were dismissed initially by Lt. Schwausch, he appealed to Warden Bergeron, but the appeals were dismissed without "thorough investigation."  He said he took a further appeal to defendant Colonel Daigre at the jail, but the decision was upheld. He complained that these various procedures were all done within minutes without any real effort to review the evidence or investigate his complaints.

As to defendant Deputy Escobar, Verdin complained that after he filed his grievances, Escobar "launched all kinds of different attacks on me, like stopping me from using the phone, taunting me, false charging me, threatening to arrest my 16-year-old daughter, . . . he stopped me from using the grievance kiosk." He described Escobar's taunting as "verbal . . . unprofessional conduct." He testified that his daughter was **not** arrested. He also alleged that Escobar disabled his PIN number so that he could not use

the telephone and grievance kiosk for ten days, after which his access was restored by another deputy, and he then filed grievances alleging retaliation by Escobar, along with his other complaints. He alleged that during this period Escobar also charged him with a felony contraband charge in criminal court relating to Verdin's removal of 'little pebbles" from the "deteriorating" floor of the jail shower, which Verdin planned to send to his family members, who "collect rocks, minerals, gemstones and fossils." Verdin said this felony contraband charge was included in the sentence he is now serving after he pled guilty to all of the charges, which "he took" merely to proceed with sentencing, which was concurrent as to all charges, and finish his jail time.

Verdin testified that his stay in the Terrebonne jail caused him problems with his "nerves." He stated that he was in the Terrebonne jail for a total of about six months from May to November 2019, after which he was transferred.

## ANALYSIS

I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579–80 (5th Cir. 1998); Lewis v. Sec'y, DOC, 2013 WL 5288989, at *2 (M.D. Fla.

Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at

8

such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326–27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482–83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176–77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a cognizable claim that his constitutional rights were violated under the broadest reading.[1]

## II.    FAILURE TO PROTECT

---

[1]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

Verdin's claims concerning his attack by other inmates, delayed extraction from the dayroom and later placement in the recreation yard with some of those inmates implicate defendants' constitutional obligation to protect prisoners from harm.

Verdin was a pretrial detainee at the time of the incidents on which he bases this claim. In Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), the Fifth Circuit held "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement." Id. at 650. Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Taylor in this case. Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650. Here, nothing more than episodic acts or omissions of jail officials have been alleged. For the following reasons, plaintiff fails to state a claim of violation of his constitutional rights cognizable under Section 1983 in the particular circumstances of this claim.

Prison officials have a duty to protect inmates from harm or violence by other inmates and to take reasonable measures to protect their safety. Farmer v. Brennan, 511 U.S. 825, 832–33 (1994); Williams v. Hampton, 797 F.3d 276, 280 (5th Cir. 2015). The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison

officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 834; Williams, 797 F.3d at 281; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105–06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182–83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, plaintiff must establish that defendants possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Williams, 797 F.3d at 281; Newton, 133 F.3d at 308. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent

12

to cause harm." <u>Mace v. City of Palestine</u>, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. <u>Davis</u>, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citing <u>Bd. of Cnty. Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997)) (additional citations and footnote omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291; <u>accord</u> <u>Williams</u>, 797 F.3d at 281.

In this case, Verdin fails completely to allege facts sufficient to establish that any possible defendant possessed a culpable state of mind sufficient to establish deliberate indifference to a substantial risk of serious harm. He testified that he had no prior issues of any kind, either in jail or before his incarceration, with any of the inmates who attacked him. He confirmed that neither he nor any defendants had any warning or other indication that the other inmates would attack him before the initial incident. There is no indication that the deputies' actions were intentional or reckless.

As to the <u>initial</u> incident, it cannot be concluded that any deputy deliberately exposed Verdin to a substantial and known risk of serious harm in the constitutional

sense.  See <u>LeBlanc v. La. State Penitentiary</u>, 2015 WL 5011984, at *3 (M.D. La. July 28, 2015), <u>report & recommendation adopted</u>, 2015 WL 5025242 (M.D. La. Aug. 24, 2015) (no deliberate indifference to prisoner's safety when plaintiff did <u>not</u> assert that he and fellow inmate who attacked him had had any prior conflict, that fellow inmate had previously threatened to cause plaintiff harm, that plaintiff had complained to defendant prior to the attack that he was in fear for his safety from fellow inmate, or that defendant had any reason to anticipate that fellow inmate would attack plaintiff without warning).

Verdin also fails to state a claim as to his complaint that the deputies delayed five to ten minutes after the fight concluded to extract him from the area. Verdin's own testimony establishes that the deputies used that short time period prudently to review what had happened on the surveillance video with a ranking officer. He conceded that he was <u>not</u> attacked again during that time period, probably because the other inmates could see that the deputies were then observing them. Significantly, <u>no</u> additional physical harm occurred during that short time period, while the deputies assessed the situation and determined what action would be appropriate.

In <u>Johnson v. Johnson</u>, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit held that a response to an inmate's concerns about his safety that includes further investigation or other appropriate action "fulfills an official's protective duties under the Eighth Amendment." <u>Longoria v. Texas</u>, 473 F.3d 586, 594 (5th Cir. 2006) (citing <u>Johnson</u>, 385 F.3d at 526). In numerous other decisions, the Fifth Circuit and other courts have held

that a prison official, who reacts to an inmate melee in the manner that these deputies responded in Verdin's case, acts reasonably and commits no violation of constitutional rights for which an inmate may state a cognizable Section 1983 claim. See Curbow v. Jackson, 307 Fed. Appx. 828, 2009 WL 139590 (5th Cir. 2009) (dismissal as legally frivolous of suit by inmate stabbed and beaten by other inmates during a prison recreation yard riot affirmed, even though defendants were subjectively aware of some risk but acted reasonably in response to it); Black v. Colunga, 656 F.Supp. 625, 637-38 (E.D. Tex. 2009) (applying Longoria standard, inmate's Section 1983 complaint dismissed where defendant corrections officer reported inmate threat to ranking officers and did not intervene alone in inmate attack); Verrette v. Major, 2008 WL 4083032, *3–4 (W.D. La. 2008) (claim dismissed against armed prison guards who did not intervene immediately in an inmate attack that happened quickly, when they acted with due concern for the security of themselves and the other inmates involved in the incident).

As to Verdin's complaint about later being placed in the same recreation yard as some of the inmates who had attacked him earlier, it cannot be concluded that any prison official unconstitutionally exposed plaintiff to a substantial risk of serious harm with deliberate indifference.  No prison official responsible for that placement has been identified who had any reason to suspect that the inmates who previously attacked him again posed a significant risk of danger to Verdin under these particular circumstances. Most significantly, Verdin testified that no harm or incident of any kind occurred on the

recreation yard. Verdin's testimony, even accepted as true in its entirety, does not rise to the level of deliberate indifference by defendants or anyone else sufficient to establish a constitutional violation.

Because Verdin has failed to allege the requisite elements of deliberate indifference and cannot state a cognizable Section 1983 claim for failure to protect him from a substantial risk of serious harm, his failure to protect claims should be dismissed.

III.   DISCIPLINARY CHARGES

Verdin's complaint that only he and Livas were disciplined for fighting, while other inmates who attacked him were not, fails to state any cognizable constitutional claim. To whatever extent, if any, that plaintiff may be claiming that his due process rights were violated based on disciplinary charges, for which he admitted guilt and was convicted, he fails to state a claim of violation of his constitutional rights. In Sandin v. Connor, 515 U.S. 472, 481–83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his denial of prison privileges as disciplinary punishment begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). In Sandin, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484 (citations omitted). Thus, in <u>Sandin</u>, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does <u>not</u> require that a prisoner be afforded the procedural mechanisms previously prescribed in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), and <u>Hewitt</u>, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." <u>Madison v. Parker</u>, 104 F.3d 765, 767 (5th Cir. 1997). "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 225 (2005) (citations omitted). The Fifth Circuit in <u>Madison</u> held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." <u>Madison</u>, 104 F.3d at 768; <u>accord</u> <u>Hernandez v. Velasquez</u>, 522 F.3d 556, 563 (5th Cir. 2008); <u>Dixon v. Hastings</u>, 117 Fed. Appx. 371, 2005 WL 17382, at *1 (5th Cir. 2005); <u>Malchi v. Thaler</u>, 211 F.3d 953, 957-58 (5th Cir. 2000). In <u>Hernandez</u> and <u>Madison</u>, the Fifth Circuit held that such restrictions do <u>not</u> represent the type of atypical, significant

deprivation in which a state might create a liberty interest. <u>Hernandez</u>, 522 F.3d at 563; <u>Madison</u>, 104 F.3d at 768.

Verdin's testimony establishes that short-term deprivation of commissary privileges was the only punishment of any kind he suffered against him based upon the disciplinary charges for fighting. Thus, he suffered no consequences of any kind that constituted such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that might give rise to any conceivable due process violation. <u>See</u> <u>Payne v. Dretke</u>, 80 F. App'x 314, 314 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause").

In addition, to whatever extent, if any, that Verdin claims disparate disciplinary treatment between him and other inmates might constitute a violation of his Equal Protection Clause rights, he fails entirely to state a claim. "To state an equal protection claim, [plaintiff] must allege, inter alia, that similarly situated individuals have been treated differently and he must also allege purposeful or <u>intentional</u> <u>discrimination</u>" relating to some class. <u>McKnight v. Eason</u>, 227 F. App'x 356, 357 (5th Cir. 2007) (citation omitted) (emphasis added); <u>accord</u> <u>Baranowski v. Hart</u>, 486 F.3d 112, 123 (5th Cir. 2007). "A prisoner must show that the prison official acted <u>with</u> <u>a</u> <u>discriminatory</u> <u>purpose</u> and thus can<u>not</u> base an equal protection claim solely on a <u>personal</u> <u>belief</u> that he was a victim of discrimination. Vague and conclusory allegations [of discrimination]

are insufficient to raise an equal protection claim." <u>Jebril v. Joslin</u>, 2008 WL 416240, at *8 (S.D. Tex. Feb. 12, 2008) (citing <u>Woods v. Edwards</u>, 51 F.3d 577, 580 (5th Cir. 1995); <u>United States v. Galloway</u>, 951 F.2d 64, 65 (5th Cir. 1992); <u>Pedraza v. Meyer</u>, 919 F.2d 317, 318 n.1 (5th Cir. 1990)); <u>accord</u> <u>Jones v. Castro</u>, 2007 WL 3396500, at *4-5 (W.D. Tex. Nov. 13, 2007) (citing <u>Al-Ra'id v. Ingle</u>, 69 F.3d 28, 32 (5th Cir. 1995)).

In the instant case, Verdin has proffered no allegations that defendants discriminated against him based on any prohibited class and has completely failed to state a claim for an equal protection violation. Verdin conceded his own guilt as to disciplinary infractions for fighting. He testified that he and Livas were treated similarly in their discipline for fighting. Plaintiff has cited nothing sufficient to establish any equal protection or other constitutional claim relating to disciplinary charges. This claim must be dismissed.

IV.    <u>GRIEVANCE HANDLING</u>

Verdin's third claim is that his administrative grievances were dismissed, insufficiently investigated and otherwise improperly handled. The Fifth Circuit has held that an inmate "does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction.  As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." <u>Geiger v. Jowers</u>, 404 F.3d 371, 374–75 (5th Cir. 2005) (citing <u>Sandin</u>, 515 U.S. at 484; <u>Orellana v. Kyle</u>, 65 F.3d 29, 31–32 (5th Cir. 1995));

accord Bell v. Woods, 382 F. App'x 391, 392 (5th Cir. 2010); Johnson, 360 F. App'x at

532.  "Additionally, [as discussed above, plaintiff] could not show any injury from the

failure [adequately] to consider his grievances because the alleged [actions of jail

officials of which] he complained . . . in the grievances did not implicate his

constitutional rights."  Bell, 382 F. App'x at 392.

       In this case, Verdin commenced the prison's administrative remedies procedure

("ARP") by filing grievances on several occasions concerning his claims arising from the

incidents that are the subject of this lawsuit.  In the constitutional sense, an ARP, at most,

may be viewed as a means of effectuating plaintiff's First Amendment right to petition

the government for redress of grievances.  In this instance, plaintiff's grievances were

received and processed through the ARP, although the ARP did not conclude with the

results that he wanted.  The Fifth Circuit has held that allegations that a prison official

has failed adequately to follow particular prison rules, regulations or procedures, such

as an ARP, cannot support a Section 1983 claim, without an independent constitutional

violation.  McFaul v. Valenzuela, 684 F.3d 564, 579 (5th Cir. 2012) (citing Dist.

Attorney's Ofc. v. Osborne, 557 U.S. 52, 67 (2009);  Jackson, 864 F.2d at 1251–52;

Neuwirth v. La. State Bd. of Dentistry, 845 F.2d 553, 557 (5th Cir. 1988)); Patel v. Haro,

470 F. App'x 240, 244 (5th Cir. 2012); Stanley v. Foster, 464 F.3d 565 (5th Cir. 2006).

"The failure of the prison to follow its own policies, including a failure to address

prisoner grievances, is not sufficient to make out a civil rights claim."  Richardson v.

Thornton, 299 F. App'x 461, 463 (5th Cir. 2008) (citing Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996)).

For these reasons, Verdin's dissatisfaction with defendants' responses to his ARP grievances and the manner in which they were handled fails to state a cognizable Section 1983 claim.

## V.    RETALIATION BY ESCOBAR

In his amended complaint, Verdin alleges that Deputy Escobar retaliated against him for filing grievances by threatening and harassing him, preventing him from filing grievances for ten days and filing a felony contraband criminal charge against him. For the following reasons, these allegations fail to state a constitutional violation of retaliation.

It is correct that prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts or to complain through proper channels about alleged misconduct by prison officials. Walker v. Savers, 2016 WL 4151212, at *5 (5th Cir. Aug. 4, 2016) (citing Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006)); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995). However, the law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial evolution in recent years.  It is based on the following general principles:

> The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident . . . would not

have occurred.  With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part & reinstated in

relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817 (1977);

Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods, 60 F.3d at 1164–66)

(quotations and additional citations omitted); accord Walker, 2016 WL 4151212, at *5;

Hanna v. Maxwell, 415 F. App'x 533, 535 (5th Cir. 2011).

In Woods, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment.  Defendants had sought dismissal of a prisoner's claim based on allegedly false disciplinary charges by defendants in alleged retaliation for plaintiff's letters of complaint to a federal judge and the prison warden.  The Fifth Circuit agreed with the district court that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution: "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties.  Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Woods, 60 F.3d at 1166 (citation and quotation omitted).  The Fifth Circuit warned that "trial courts must carefully scrutinize these claims." Id.

> To state a claim of retaliation <u>an inmate must allege the violation of a specific constitutional right</u> and be prepared to establish that <u>but for</u> the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . .  The inmate must produce <u>direct evidence of motivation</u> or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

<u>Id.</u> (citations omitted) (emphasis added); <u>accord</u> <u>Walker</u>, 2016 WL 4151212, at *5.

A year after <u>Woods</u> was decided, the Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).  Significantly, to state a claim that his constitutional right of access to the courts was violated, a prisoner must demonstrate that his position as a litigant was actually prejudiced.  <u>Id.</u> at 356; <u>Every v. Jindal</u>, 413 F. App'x 725, 727 (5th Cir. 2011) (citing <u>Lewis</u>, 518 U.S. at 349-50; <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999)); <u>Cochran v. Baldwin</u>, 196 F. App'x 256, 257–58 (5th Cir. 2006) (citing <u>Lewis</u>, 518 U.S. at 350-51); <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328 (5th Cir. 1996).  In <u>Lewis</u>, the Supreme Court made clear that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts.  <u>Id.</u> at 349–50.

A few years ago in <u>Morris</u>, a case of first impression in the Fifth Circuit, the court addressed "[w]hether an allegation of <u>de minimis</u> retaliatory acts can support a retaliation claim" under the First Amendment.  <u>Morris</u>, 449 F.3d at 684.  The court stated that

> [t]he question, however, is not whether the violation of [plaintiff's] constitutional rights was <u>de minimis</u>, but whether any violation occurred at all.  To establish a constitutional violation, an inmate must show that he

suffered a qualifying adverse retaliatory act.  If the retaliation alleged by [plaintiff] does not pass this bar, he has suffered no constitutional injury.

Id.  The Fifth Circuit held that

> [t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights.  Some acts, though maybe motivated by retaliatory intent, are so de minimis that they would not deter the ordinary person from further exercise of his rights.  Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.
>     . . . . Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. . . .
>     With this standard in mind, we turn to the specific retaliation alleged by [plaintiff] to determine whether the actions of the [prison] officials would have deterred a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials.

Id. at 686 (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)).

The Fifth Circuit's reasoning and rulings in Morris accord with the Supreme Court's holding in Lewis that a prisoner who brings a retaliation claim under the First Amendment must allege actual injury to his position as a litigant in order to assert a claim.  Furthermore, the alleged retaliatory acts must be more than de minimis, which means they must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights.    Accepting as true plaintiff's testimony and written allegations, he has not established that a violation of his federal constitutional rights concerning retaliation has occurred under the circumstances he described. First, Verdin's complaints that Escobar threatened him and his daughter and verbally taunted

and harassed him fail to establish unconstitutional conduct. Allegations of verbal threats or other derogatory remarks, even racial slurs, do not constitute actionable constitutional violations.  Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995).  The Robertson court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" Id. (citation omitted); accord Watson v. Winborn, 67 Fed. Appx. 241, 241 (5th Cir. 2003); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002); Vessell v. Gusman, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing Calhoun, 312 F.3d at 734; Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)). "Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim . . . ." Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994); see Portillo v. Brown, 2009 WL 1160345, at *2 (N.D. Tex. Apr. 28, 2009) (inmate's allegations that prison employee called him names, laughed at him and refused to dismiss disciplinary action against him based on his race were conclusory and failed to state a claim).

Second, Verdin's allegations that Escobar prevented him from using the telephone or jail kiosk to file grievances for ten days before another deputy restored his access fail to state an actionable First Amendment retaliation claim. Escobar's alleged actions merely delayed his ability to file for a short time period and did not prevent Verdin from

25

filing grievances. As discussed above, to state a claim that his constitutional right of access to the courts was violated, a prisoner must demonstrate that his position as a litigant was actually prejudiced.  Lewis, 518 U.S. at 356 (1996); Every, 413 F. App'x at 727; Jones, 188 F.3d at 325; Cochran, 196 F. App'x at 257–58; Eason, 73 F.3d at 1328. Verdin's testimony and written submissions are clear that he filed several grievances and that they were all addressed, though not to his satisfaction.

Finally, Verdin characterizes Escobar's submission of felony constitutional criminal charges against him as retaliation. Verdin concedes, however, that he pled guilty to the contraband charge, which became part of the basis for the two-year prison sentence he is currently serving. In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state confinement, which has not been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the

invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486–87 (emphasis in original) (footnote omitted).

Verdin's claim about the contraband charge is clearly connected to the validity of his conviction. Heck, 512 U.S. at 479. (Convicted prisoner's Section 1983 action for damages barred because it challenged the conduct of state officials who allegedly "'had engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to petitioner's arrest); Ruiz v. Hofbauer, 325 F. App'x 427, 431 (6th Cir. 2009), cert. denied, 130 S. Ct. 413 (2009) (Section 1983 claims were barred when convicted inmate alleged that defendants violated his civil rights "to maliciously prosecute plaintiff").

Verdin stated that he pled guilty to the same criminal contraband charge on which plaintiff bases his retaliation claim in this case.  Under these circumstances, his claim must be dismissed at this time under Heck, 512 U.S. at 477.

None of the bases for the retaliation claim Verdin asserts against Escobar assert an underlying constitutional violation. Like the other claims he asserts in this case, Verdin's retaliation claim fails to establish a cognizable constitutional claim.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____27th_____ day of January, 2020.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.